***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MAUREEN ABBEDUTTO, | : | Civ. Action No. 17-5812(FLW) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| JOHNSON & JOHNSON, *et al.*, | : | |
| Defendants. | : | |
| NANCY BAKER, | : | Civ. Action No. 17-7712(FLW) |
| Plaintiff, | : | |
| v. | : | |
| JOHNSON & JOHNSON, *et al.*, | : | |
| Defendants. | : | |
| CAROLYN BENNETT, | : | Civ. Action No. 17-7723(FLW) |
| Plaintiff, | : | |
| v. | : | |
| JOHNSON & JOHNSON, *et al.*, | : | |
| Defendants. | : | |
| EDNA BROWN, | : | Civ. Action No. 17-5724(FLW) |
| Plaintiff, | : | |
| v. | : | |
| JOHNSON & JOHNSON, *et al.*, | : | |
| Defendants. | : | |

| | |
|---|---|
| KIM KNIGHT, | Civ. Action No. 17-5796(FLW) |
| Plaintiff, | |
| v. | |
| JOHNSON & JOHNSON, *et al.*, | |
| Defendants. | |

**WOLFSON, Chief Judge**:

In the instant matter, Plaintiffs Maureen Abbedutto, Nancy Baker, Carolyn Bennett, Edna Brown, and Kim Knight (collectively "Plaintiffs"), all Illinois residents, each move to remand their cases to state court, arguing that removal to federal court by Johnson & Johnson, Inc. ("J&J") was improper because defendant Walgreen Co. ("Walgreen"), also an Illinois resident, was not fraudulently joined as a defendant. Because I find that Walgreen was properly joined in these cases, Plaintiffs' motions are **GRANTED**, and these cases are remanded to the Illinois state courts from which they were brought.

## BACKGROUND and PROCEDURAL HISTORY

The above-referenced actions are companion cases to the Multidistrict Litigation ("MDL"), titled "Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation," Civ. Action No. 16-2738, which has been assigned to this Court. Plaintiffs first filed individual suits in Illinois state court. In their state-court complaints, Plaintiffs named as defendants the following entities: Johnson & Johnson, Johnson & Johnson Consumer, Inc., Johnson & Johnson

Consumer Companies, Inc., Johnson & Johnson Consumer Logistics Services, LLC, Johnson & Johnson Baby Products, Inc. (collectively, "J&J"), Imerys Talc America, Inc. f/k/a Luzenac America, Inc. ("Imerys"),[1] and Walgreen Co. ("Walgreen") (together with J&J as "Defendants"). Invoking diversity jurisdiction, J&J removed these matters to various United States District Courts in Illinois, which were then transferred to this Court by the Judicial Panel on Multidistrict Litigation. Before me are Plaintiffs' motions for remand.

As in all other member cases in this MDL, Plaintiffs' actions arise from diagnoses of ovarian cancer, which each Plaintiff alleges was caused by regular, perineal use of Johnson & Johnson Baby Powder and Shower to Shower talcum powder products. Compl.,¶ 31.[2] Relevant here, Plaintiffs allege that "Walgreen was marketing, promoting, and selling the PRODUCTS in the regular course of business." *Id.* at ¶ 19. Plaintiffs further allege that, "[a]s a manufacturer of its own products containing talc, Walgreen had actual knowledge that the use of the PRODUCTS in the perineal area could cause ovarian cancer." *Id.* at ¶ 20. In total, Plaintiffs bring eight claims against Walgreen: (1) failure to warn, (2) negligence, (3) breach of express warranty, (4) breach of implied warranty, (5) negligent misrepresentation, (6) fraudulent misrepresentation, (7) civil conspiracy, and (8) concerted action.

---

[1] Since removal, Imerys has petitioned for bankruptcy, and as such, all matters involving Imerys have been stayed by the automatic stay.

[2] Because the complaints in all these cases are substantially similar, I will only cite the *Brown* Complaint.

3

In the instant matter, Plaintiffs seek remand of these actions to state court on the basis that complete diversity is lacking since Walgreen is a citizen of Illinois, and that it was properly joined. In response, J&J argues that despite the various counts asserted against Walgreen, Plaintiffs have not demonstrated that there are any colorable claims against Walgreen. More specifically, as to Plaintiffs' failure-to-warn claim, J&J contends that Walgreen is not liable under 735 ILCS 5/2–621, Illinois's products liability statute, because Walgreen, as an innocent seller, should be dismissed from suit. For the reasons that follow, I disagree.[3]

## DISCUSSION

Pursuant to 28 U.S.C. § 1407, this civil action was transferred to this Court as part of the Johnson & Johnson Talcum Powder Products multidistrict litigation ("MDL"). "The legislative history of § 1407 . . . demonstrates that Congress intended transferee courts to have broad pretrial authority." *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). "Under the Federal rules the transferee district court [has] authority to render summary judgment, to control and limit pretrial proceedings, and to impose sanctions for failure to make discovery or comply with pretrial orders." *Id.* (citation omitted). Accordingly, as a preliminary matter, to the extent that the parties rely on Seventh Circuit law in the context of remand, this Court notes that such law does not govern the instant motion. Specifically, "[a]s an MDL court sitting within the Third Circuit, [this District Court] must apply [this] Court of Appeals' fraudulent

---

[3] Because I find that Plaintiffs have alleged a colorable failure-to-warn claim against Walgreen, I need not address all other counts.

joinder standard." *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. 03-20128, 2003 U.S. Dist. LEXIS 12228, 2003 WL 21973329, at *2 (E.D. Pa. June 12, 2003) (citing *In re Korean Airlines Disaster*, 829 F.2d 1171, 1174, 265 U.S. App. D.C. 39 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 109 S. Ct. 1676, 104 L. Ed. 2d 113 (1989)); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 484 (E.D. Pa. 2000)); see also *In Re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-CV-03610-FLW, 2014 U.S. Dist. LEXIS 142910, 2014 WL 4954654, at *6-*8 (D.N.J. Oct. 1, 2014) (applying the Third Circuit's fraudulent joinder standard to a matter that was initially filed in California state court and subsequently removed to the U.S. District Court for the Northern District of California, where it was transferred to the District of New Jersey as part of an MDL).

**STANDARD OF REVIEW**

As the Transferee Judge in an MDL, I apply the procedural law of the Third Circuit. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. 03-20128, 2003 U.S. Dist. LEXIS 12228 (E.D. Pa. June 12, 2003) (citing *In re Korean Airlines Disaster*, 829 F.2d 1171, 1174 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." The defendant seeking to remove the matter bears the burden of showing that (1) federal subject matter jurisdiction exists, (2) removal was timely

filed, and (3) removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085, 111 S. Ct. 959, 112 L. Ed. 2d 1046 (1991). After a case has been removed, the district court, however, may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c).

In cases where subject matter is based on diversity jurisdiction, *see* 28 U.S.C. § 1332, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a); *Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). Additionally, Section 1441(b)(2) imposes another condition on removal known as the "forum defendant rule," which provides that an "action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." "Therefore, the forum defendant rule prohibits removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case." *In Re Plavix Prod. Liab. & Mktg. Litig.*, 2014 U.S. Dist. LEXIS 142910, 2014 WL 4954654, at *3 (citing *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

**FRAUDULENT JOINDER**

An exception to the requirement that removal be based solely on complete diversity is the doctrine of fraudulent joinder. *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). Where multiple defendants are named, but one or more are not of diverse

6

citizenship from the plaintiff, "the diverse defendant[s] may still remove the action if [they] can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. The Third Circuit has instructed "that joinder is fraudulent where 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Boyer,* 913 F.2d at 111 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (describing a claim as not colorable if it is "wholly insubstantial and frivolous"). Accordingly, a court's determination of fraudulent joinder does not focus on whether plaintiff's claims are "plausible" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) or Rule 12(b)(6), rather it focuses on whether they are more than "frivolous." *In re Briscoe*, 448 F.3d at 218; *Batoff*, 977 F.2d at 852. Importantly, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *In re Briscoe*, 448 F.3d at 218 (quoting *Batoff*, 977 F.2d at 852).

To determine fraudulent joinder, "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed." *McBride*, LEXIS 169330, at *13 (quoting *Hogan v. Raymond Corp.*, 536 F. App'x 207, 211 (3d Cir. 2013) (citations omitted). "[A] court must first 'ask whether, on the face of the complaint, there are sufficient allegations concerning identity and conduct to justify consideration of their citizenship." *In re Briscoe*, 448 F.3d at 218 (quoting *Abels*, 770 F.2d at 29).

7

## ANALYSIS

Plaintiffs' tort claims arise from decades of regular perineal application of Johnson & Johnson Baby Powder and Shower to Shower talcum powder. Compl.,¶ 31. In Count 12, Plaintiffs assert that Walgreen is liable for its failure to warn of talc's defects. *Id.* at ¶ 171. Specifically, Plaintiffs allege that J&J talcum powder products failed to contain adequate warnings, instructions, or information about the increased risk of ovarian cancer associated with perineal use, while representing the product as safe for use and application to the female genital area. *Id.* at ¶ 185.

J&J maintains that Walgreen, as a "pass-through retailer," merely provided "shelf-space" for J&J products. (Notice of Removal, ¶¶ 27, 28). J&J argues that Plaintiffs' allegations regarding Walgreen's knowledge of the J&J talcum powder products' defects are lacking; and in that connection, J&J submits a certification that attests to the following: "Walgreen Co. did not have any knowledge or information regarding any alleged defects of [J&J talcum powder] products, which allegedly caused injury or damages to purchasers or users." *See* Brindley Aff., ¶ 12. Hence, J&J reasons that without the requisite knowledge, Walgreen was simply an innocent seller that cannot be subject to liability under Illinois's product liability laws.

Turning to Illinois product liability law, "all persons in the distributive chain are liable for injuries resulting from a defective product." *Thomas v. Kaiser Agricultural Chemicals*, 407 N.E.2d 32, 36 (Ill. 1980). Moreover, "the failure to warn of a product's dangerous propensities may serve as the basis for holding the manufacturer or seller strictly liable in tort." *Hammond v. North American Asbestos*

*Corp*, 454 N.E.2d 210, 216 (Ill. 1983) (citing *Woodill v. Parke Davis & Co.*, 402 N.E.2d 194 (Ill. 1980)). Nevertheless, nonmanufacturing defendants qualify for a statutory exception to supply-chain product liability under 735 ILCS 5/2–621. The statute provides that:

> (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section. Due diligence shall be exercised by the certifying defendant or defendants in providing the plaintiff with the correct identity of the manufacturer or manufacturers, and due diligence shall be exercised by the plaintiff in filing an action and obtaining jurisdiction over the manufacturer or manufacturers . . . .

735 ILCS 5/2–621(b). Based on this provision, "any nonmanufacturing defendant who has not contributed to the alleged defect is entitled automatically to dismissal from a products liability action." *Harris v. Johnson & Johnson*, 2017 U.S. Dist. LEXIS 220407, at *5-6 (N.D. Ill. May 30, 2017) (quoting *Yount v. Shashek*, 472 F. Supp. 2d 1055, 1065 (S.D. Ill. 2006); *see also Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569, 573 (Ill. App. Ct. 3d Dist. 2008) ("Pursuant to section 2-621, also known as the 'seller's exception,' a nonmanufacturer defendant in a strict product liability action may be dismissed from the action if it certifies the correct identity of the manufacturer of the product which allegedly caused the injury.").

Importantly, and relevant here, the exception does not permit dismissal of nonmanufacturer sellers if the plaintiff can prove:

> (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to

9

the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or

(2) *That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage*; or

(3) That the defendant created the defect in the product which caused the injury, death or damage.

735 ILCS 5/2–621(c)(1)-(3) (emphasis added).

Here, Plaintiffs argue that Walgreen's knowledge of J&J talcum powder products' defects makes it liable under 735 ILCS 5/2–621(c)(2), which provision bars dismissal under the seller's exception if the defendant had actual knowledge of the defect in the product which caused the injury, death or damage. Indeed, in the Complaint, Plaintiffs allege that, "[a]s a manufacturer of its own products containing talc, Walgreen had actual knowledge that the use of the PRODUCTS in the perineal area could cause ovarian cancer. Compl.,¶ 20. Plaintiffs also allege that "[a]t all pertinent times… Walgreen [was] assessing and analyzing the safety, efficacy, and suitability of the PRODUCTS." *Id.* at ¶ 42. Finally, Plaintiffs allege that Walgreen and J&J "[t]ogether at their shared office… coordinate sales, distribution, marketing, shopper insight, customer loyalty to Walgreen, customer rewards, Walgreen shoppers' trending specific to the [J&J talcum powder products], sales, sales goals and customer service." *Id.* at ¶ 21. Accepting these allegations as true, Plaintiffs have sufficiently alleged a reasonable basis regarding whether Walgreen had the requisite

knowledge of defect, and as such, under a fraudulent joinder analysis, Walgreen would not be entitled to rely on the seller's exception at this stage.[4]

I note that in several prior cases — all nearly identical to this matter on the facts and involve products liability claims — Illinois district courts have rejected similar fraudulent joinder arguments in this context made by J&J, and granted plaintiffs' motions to remand. *See, e.g., Harris*, 2017 U.S. Dist. LEXIS 220407, at *9 (finding that the plaintiff sufficiently alleged that Walgreen was more than a mere pass-through retailer); *Frye v. Johnson & Johnson*, No. 18-940, 2018 U.S. Dist. LEXIS 67002 (N.D. Ill. Apr. 20, 2018) (same); *Harlan v. Johnson & Johnson*, No. 15-0418, 2015 U.S. Dist. LEXIS 115340, at *8-9 (S.D. Ill. Aug. 31, 2015)(same); *Doles v. Johnson & Johnson*, No. 09-862, 2009 U.S. Dist. LEXIS 96555, at *15-16 (S.D. Ill. Oct. 19, 2009); *Lewis v. Johnson & Johnson*, No. 15-0565, 2015 U.S. Dist. LEXIS 115338, at *7-8 (S.D. Ill. Aug. 31, 2015); *Cadagin v. Johnson & Johnson*, No. 18-1821,

---

[4] Defendant's certification that Walgreen did not know of talc-powder's alleged defects does not change this conclusion. A court may pierce the pleadings for indicia of fraudulent joinder after examining the face of the complaint only "if it does not step 'from the threshold jurisdictional issue into a decision on the merits.'" *In re Briscoe*, 448 F.3d at 219 (quoting *Boyer*, 913 F.2d at 112); *see also Batoff*, 977 F.2d at 852. Courts decline to consider defendant's sworn affidavits in the context of fraudulent joinder because doing so would inappropriately require courts to make merit-based factual determinations. *See Boomerang Recoveries, LLC v. Guy Carpenter & Co., LLC*, 182 F. Supp. 3d 212, 219-221 (E.D. Pa. 2016) (reasoning that it would be improper to consider defendant's certifications because they would be excluded from a Rule 12(b)(6) inquiry, which is more searching than fraudulent joinder analysis); *see also Holguin v. Kohl's Dep't Store, Inc.*, No. 2:15-cv-07016-SDW-LDW, 2016 U.S. Dist. LEXIS 30356, at *6-7 (D.N.J. Feb. 19, 2016); *Alexandre*, 2019 U.S. Dist. LEXIS 96830, at *12-13. Because J&J's purported evidence, at best, disputes Plaintiffs' allegations of knowledge, and because it would be improper for the Court to resolve such a factual dispute on the merits at this jurisdictional stage, the Court cannot consider J&J's certification.

2018 U.S. Dist. LEXIS 177742, at *5-8 (S.D. Ill. Oct. 16, 2018). Having reviewed them, I am in agreement with those courts' assessment.

In short, on the face of the Complaint, I cannot find any indicia of fraudulent joinder for the purpose of destroying diversity. Plaintiffs' allegations of failure to warn show an actual intention to proceed against Walgreen. Accordingly, because Plaintiffs' failure-to-warn claim against Walgreen is colorable under 735 ILCS 5/2–621, Walgreen was not fraudulently joined, removal was improper, and the motion to remand is, therefore, **GRANTED**.[5]

## CONCLUSION

Because Plaintiffs have at least one colorable claim against Walgreen, *i.e.* failure-to-warn under 735 ILCS 5/2–621, removal based on fraudulent joinder was improper. Plaintiffs' motions to remand are **GRANTED**. The above-captioned matters are remanded to Illinois state courts from which they were removed.

DATED: July 19, 2019 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[5] I make no comment on whether Plaintiffs have sufficiently stated a failure-to-warn claim against J&J. My analysis is solely confined to fraudulent joinder.

12